IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JONATHAN WARREN,

     Plaintiff,

vs.                                      Civ. No. 12-1086 KG/LAM

EMERALD HEALTHCARE SYSTEMS;
EMERALD CORRECTIONAL MANAGEMENT, LLC;
WARDEN ARTHUR ANDERSON;
KAMERIN ST. CLAIRE;
TONI GARRETT; DOCTOR JOHN DOE,

     Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants Emerald Correctional Management, LLC, and Warden Arthur Anderson's Opposed Motion to Dismiss Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted Pursuant to F.R.C.P. 12(b)(6) and Memorandum in Support (Motion to Dismiss), filed February 18, 2013. (Doc. 26). On March 4, 2013, Plaintiff responded to the Motion to Dismiss, and on March 18, 2013, Defendants Emerald Correctional Management, LLC and Anderson filed their reply. (Docs. 32 and 33). Having reviewed the Motion to Dismiss and the accompanying briefs, the Court grants the Motion to Dismiss, in part, in that Count IV of the Amended Complaint for the Recovery of Damages Caused by the Deprivation of Civil Rights (Amended Complaint) (Doc. 22) is dismissed without prejudice as to Defendant Emerald Correctional Management, LLC and as to Defendant Anderson in his official capacity.

*A.  Background*

    *1. The Amended Complaint*

This is an inmate lawsuit brought under 42 U.S.C. § 1983 and state tort law for failure to provide adequate medical care and for inhumane conditions of confinement.  Plaintiff, a former inmate at the Lincoln County Detention Center (LCDC), is suing Emerald Correctional Management, LLC, a private corporation which operates LCDC; Emerald Healthcare Systems, LLC, a private corporation which provides healthcare to inmates at LCDC; Arthur Anderson, the warden at LCDC, in his individual and official capacities; Kamerin St. Claire, a medical provider contracted by LCDC to provide medical services; Toni Garrett, a nurse employed by LCDC to provide medical services; and Doctor John Doe.

    *a.  Factual Allegations*

Plaintiff alleges that Defendants Anderson and Garrett knew that Plaintiff suffered from mental health problems prior to his incarceration at LCDC in February 2011.  (Doc. 22) at ¶ 16.  When Plaintiff arrived at LCDC in February 2011, he was placed in solitary confinement.[1]  *Id*. at ¶ 18.  According to Plaintiff, he "repeatedly asked Defendants Anderson, Garrett and St. Claire to be placed on mental health medications," and he repeatedly asked those Defendants for medical help for his mental illness.  *Id*. at ¶¶ 24 and 26.  Plaintiff's family members also allegedly alerted Defendants about Plaintiff's mental health problems.  *Id*. at ¶ 27.  Plaintiff

---

[1] Defendants Emerald Correctional Management, LLC and Anderson contest Plaintiff's use of the term "solitary confinement" as indicative of confinement for punitive or disciplinary purposes.  Plaintiff's allegations, however, do not necessarily exclude an inference that the confinement might have been punitive in nature.

contends that his isolation and lack of medical care resulted in a deterioration of his mental health.[2]  *Id.* at ¶¶ 28 and 29.

Plaintiff claims that on or about March 14, 2011, "a female civilian called the jail and warned them Plaintiff was in danger of hurting himself and was possibly suicidal."  *Id.* at ¶ 30. According to Plaintiff, this information would have been communicated to Defendant Anderson and the medical provider.  *Id.* at ¶ 31.  Also, on March 14, 2011, Plaintiff asserts that he "begged for help and began to cause a disturbance."  *Id.* at ¶ 32.  Plaintiff was then allegedly pepper sprayed for his behavior.  *Id.* at ¶ 33.  Plaintiff maintains that he was released from LCDC on March 18, 201l, "without mental health medications or psychiatric care."  *Id.* at ¶ 35.

On July 11, 2011, Plaintiff returned to LCDC and was again placed in solitary confinement.  *Id.* at ¶¶ 36 and 37.  Plaintiff contends that Defendants Anderson, Garrett, and Doe did not adequately conduct a July 12, 2011, medical screening because the screening indicated that Plaintiff had no history of mental illness while other intake forms showed that Plaintiff needed mental health medications.  *Id.* at ¶¶ 19, 20, and 21.  Plaintiff alleges that on July 18, 2011, his "mother notified Defendants Anderson and Garrett they were mistreating Plaintiff and sent Defendant Anderson materials outlining his legal requirement to provide Plaintiff with adequate medical care."  *Id.* at ¶ 38.  Two days later, Plaintiff contends that he told Defendant St. Claire that he was contemplating suicide and needed help.  *Id.* at ¶¶ 40 and 41.

On July 31, 2011, Plaintiff allegedly punched a sink, breaking his hand, and then cut his forearms with a blade.  *Id.* at ¶ 44 and 45.  Plaintiff was subsequently placed on suicide watch in an isolation cell.  *Id.* at ¶ 46.  According to Plaintiff, he later tore the stitches from his arm and

---

[2] Plaintiff further alleges that he "repeatedly requested medical help for complications associated with a traumatic back injury."  *Id.* at ¶ 25.  The focus of the Amended Complaint, however, is on Plaintiff's mental illness.

flooded his cell.  *Id*. at ¶ 52.  Plaintiff also alleges that Defendants Anderson, Garrett, and St. Claire did not send Plaintiff to a hospital emergency room nor would Defendant Anderson transport Plaintiff to medical appointments throughout August and September 2011.  *Id*. at ¶¶ 53 and 54.  Plaintiff maintains that "Defendants Anderson, Garrett and St. Claire all knew of Plaintiff's deteriorating mental health."  *Id*. at ¶ 48.  Plaintiff claims that he was still not prescribed mental health medications nor did he meet with a mental health provider who could prescribe needed medications.  *Id*. at ¶ 50.

Plaintiff further maintains that on September 15, 2011, he refused to close the food port on his cell door and told staff not to come near him.  *Id*. at ¶ 57 and 58.  Plaintiff apparently had a razor blade.  *Id*. at ¶ 58.  As a result of this behavior, Plaintiff claims that he was pepper sprayed twice and that a detention officer finally talked him into giving up the razor blade.  *Id*. at ¶¶ 59-62.   On September 24, 2011, Plaintiff asserts that Defendant Garrett reported that Plaintiff was hitting his head on the door, that Plaintiff needed mental health services, and that Plaintiff should be placed on a suicide watch.  *Id*. at ¶ 63.  Plaintiff contends that on September 26, 2011, he was hitting his head against a wall and cutting his throat and forearms.  *Id*. at ¶ 65.  Although Plaintiff was placed on suicide watch, Plaintiff maintains that he was still not prescribed any mental health medications.  *Id*. at ¶ 66.

Plaintiff also alleges that Defendant Anderson "authorized the removal of all letters, books, visitation and phone calls from Plaintiff," and "Defendants Anderson and Garrett authorized the removal of all clothing from Plaintiff with the exception of a 'suicide smock.'"  *Id*. at ¶¶ 67 and 68.  Plaintiff contends that since Defendants Anderson and "Emerald" had only one male suicide smock, the suicide smock Plaintiff wore "would become dirty with urine, feces or pepper spray" and, therefore, Plaintiff "would be left naked for days or weeks at a time" while

4

the suicide smock was being laundered, a process which took a long time because of a faulty laundry facility.  *Id*. at ¶ 69-73.  Plaintiff further alleges that "Emerald staff noticed how cold Plaintiff was and at times saw him using his suicide smock as a mattress rather than lie on the bare concrete bunk."  *Id*. at ¶ 74.

Moreover, Plaintiff claims that on November 1, 2011, medical staff observed that Plaintiff was better when he was not isolated.  *Id*. at ¶ 75.  In fact, according to Plaintiff, Defendant Garrett told Defendant Anderson that Plaintiff would do better "in medical and not in isolation."  *Id*. at ¶ 76.  Plaintiff alleges that Defendant Anderson, nonetheless, kept Plaintiff in isolation and refused Plaintiff's request for mental health medications.  *Id*. at ¶¶ 77-79.

In addition, Plaintiff contends that he was not allowed to exercise and that throughout November and December 2011 his feet became swollen, red, and painful.  *Id*. at ¶¶ 83-85. Plaintiff further contends that he "went extraordinarily long periods of time locked in his cell." *Id*. at ¶ 84.  Plaintiff also alleges that staff continued to note that Plaintiff was cold and needed additional clothing or a blanket.  *Id*. at ¶¶ 80 and 93.  Plaintiff maintains that he tried to stay warm by covering the vents in his cell with toilet paper, but that Defendant Anderson "allowed his staff to remove all items from Plaintiff's cell including toilet paper."  *Id*. at ¶¶ 86 and 87.  On November 28, 2011, Defendant St. Claire allegedly admitted that LCDC "was no longer capable of housing Plaintiff."  *Id*. at ¶ 94.  Nonetheless, according to Plaintiff, on December 27, 2011, Defendant St. Claire told staff not to "enable" Plaintiff rather than provide Plaintiff with medical care.[3]  *Id*. at ¶ 95.

---

[3] During this time, Plaintiff also contends that he developed dental problems and that Defendant Garrett would not arrange for a dentist to examine Plaintiff.  Instead, Defendant Garrett gave Plaintiff non-prescription pain medication.  (Doc. 22) at ¶¶ 96 and 97.

Plaintiff further asserts that he was denied access to programs available to inmates in the general population, and "[f]or extraordinarily long periods of time[, he] was not afforded recreation, shower facilities, or commissary." *Id.* at ¶¶ 88 and 89. Plaintiff also asserts that he was denied access to the mail and that he "was fed a bland diet of cold sack lunches and finger food." *Id.* at ¶¶ 90 and 91.

On January 10, 2012, Plaintiff contends that he was transported to the New Mexico Behavioral Health Institute for a competency determination. *Id.* at ¶ 98. Plaintiff alleges that he "was described as unkempt and disheveled, as looking older than his chronological age and as having a long beard." *Id.* at ¶ 99. Plaintiff notes that his "mental health immediately improved when he was removed from solitary confinement" and when he was placed on mental health medications. *Id.* at ¶¶ 100-102. Plaintiff alleges that once he became stable, he was transferred to LCDC on February 29, 2012. *Id.* at ¶ 103. Upon arrival at LCDC, Plaintiff asserts that Defendant Anderson again placed him in solitary confinement and that his mental health began to deteriorate. *Id.* at ¶¶ 104-105. Plaintiff was released on March 12, 2012. *Id.* at ¶ 106.

Finally, Plaintiff alleges that Defendant Anderson did not afford him a hearing before being placed in solitary confinement nor did Defendant Anderson provide periodic review of Plaintiff's classification. *Id.* at ¶ 114.

### b. Plaintiff's Claims

Plaintiff brings six Counts in this lawsuit. In Count I, Plaintiff alleges a Section 1983 claim that Defendant Anderson violated Plaintiff's Fourteenth Amendment procedural due process rights. In Count II, Plaintiff alleges a Section 1983 claim that Defendants Anderson, Garrett, and St. Claire violated Plaintiff's Fourteenth Amendment substantive due process rights and his Eighth Amendment right to be free from cruel and unusual punishment. In Count III,

6

Plaintiff alleges an Americans with Disabilities Act (ADA) claim against Defendant Anderson. In Count IV, Plaintiff alleges a Section 1983 claim that Defendant Anderson's policies and customs violated Plaintiff's constitutional rights. Count IV possibly implicates Defendant Emerald Correctional Management, LLC's policies and customs as well. In Count V, Plaintiff alleges that Defendants committed the state tort of false imprisonment. Finally, in Count VI, Plaintiff alleges that Defendants committed the state torts of negligent maintenance of a building and negligent operation of a medical facility.

    2.  *The Motion to Dismiss*

Defendant Anderson moves to dismiss Count I. Defendant Emerald Correctional Management, LLC moves to dismiss Count IV as it applies to Defendant Emerald Correctional Management, LLC. Defendant Anderson also moves to dismiss the official capacity claim brought against him in Count IV. Next, Defendant Anderson moves to dismiss the individual capacity claims brought against him in Count II. Finally, Defendant Anderson moves to dismiss Count III. The Court will address Defendants Anderson and Emerald Correctional Management, LLC's arguments in the order presented in the Motion to Dismiss. Plaintiff opposes the Motion to Dismiss in its entirety.

**B.  Standard of Review**

A court, in accordance with Rule 12(b)(6), may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic

recitation of the elements of a cause of action.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007).  While a complaint does not need to include detailed factual allegations,

"factual allegations must be enough to raise a right to relief above the speculative level...."  *Id.*

In other words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious

that the plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its

face."  *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the defendant is liable for the misconduct
> alleged.  The plausibility standard is not akin to a "probability requirement," but it asks
> for more than a sheer possibility that a defendant has acted unlawfully.  Where a
> complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops
> short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citations omitted).  Courts must draw on their

"judicial experience and common sense" to assess a claim's plausibility.  *Id*. at 679.

*C.  Discussion*

> *1.  Count I:  The Section 1983 Fourteenth Amendment Procedural Due Process Claim
> Against Defendant Anderson*

Defendant Anderson moves first to dismiss Count I, the Section 1983 procedural due

process claim.  Defendant Anderson argues that placing Plaintiff in non-punitive administrative

segregation did not deprive Plaintiff of any liberty interest protected by Fourteenth Amendment

procedural due process rights.  Defendant Anderson notes that he reasonably exercised his

discretion to place Plaintiff in administrative segregation for Plaintiff's own safety.

The United States Supreme Court has held that "the Constitution does not give rise to a

liberty interest in avoiding transfer to more adverse conditions of confinement."  *Wilkinson v.

Austin*, 545 U.S. 209, 221 (2005).  A state's policies or regulations, however, can create a liberty

interest in avoiding adverse conditions of confinement which "impose[] atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 222-23. Even if harsh conditions of confinement may be "necessary and appropriate," as Defendant Anderson claims in this case, that necessity does not diminish the fact that the conditions of confinement can still "give rise to a liberty interest in their avoidance." *Id.* at 224.

To assess whether a state's policies or regulations create a liberty interest in avoiding adverse conditions of confinement, the Court looks at four, non-dispositive factors:

> whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement ...; and (4) the placement is indeterminate (in *Wilkinson* the placement was reviewed only annually).

*Estate of DiMarco v. Wyoming Dept. of Corrections, Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007). Once a court determines that a plaintiff has a liberty interest in avoiding adverse conditions of confinement, a court must determine whether the plaintiff received adequate process. In the context of a case like this one, "[d]ue process [is] satisfied as long as a state allowed (1) a sufficient initial level of process, i.e., a reasoned examination of the assignment; (2) the opportunity for the inmate to receive notice and respond to the decision; and (3) safety and security concerns to be weighed as part of the placement decision." *Id.* at 1344 (citing *Wilkinson*, 545 U.S. at 226-27).

> ### a. Whether Plaintiff Plausibly Alleges that He has a Liberty Interest in Avoiding Solitary Confinement
>
> > #### (1) Did Plaintiff Plausibly Allege that Solitary Confinement Did Not Relate to and Further a Legitimate Penological Interest, Such as Safety or Rehabilitation?

Plaintiff alleges that Defendant Anderson decided to keep Plaintiff in solitary confinement despite being informed in November 2011 that Plaintiff did better if he was not in isolation. (Doc. 22) at ¶¶ 75-77. Viewing this factual allegation in the light most favorable to

Plaintiff, the Court can reasonably infer that Defendant Anderson did not have a legitimate penological interest in keeping Plaintiff in solitary confinement. Plaintiff, therefore, has plausibly alleged that placing Plaintiff in solitary confinement did not relate to and further a legitimate penalogical interest.

*(2) Did Plaintiff Plausibly Allege that the Conditions of Placement were Extreme?*

Plaintiff alleges that Defendant Anderson authorized the removal of letters and books, and prohibited visitations, phone calls, and access to mail. *Id.* at ¶¶ 67 and 90. Moreover, Plaintiff alleges that he was fed bland cold lunches and finger foods. *Id.* at 91. Plaintiff also alleges that the "suicide smock would become dirty with urine, feces or pepper spray" and that he "would be left naked for days or weeks at a time" while the suicide smock was being laundered. *Id.* at ¶¶ 68-73, 81-82. In addition, Plaintiff contends that staff saw that he was cold and that he used his "suicide smock as a mattress rather than lie on the bare concrete bunk." *Id.* at ¶¶ 74, 80, and 92. Plaintiff also alleges that he tried to stay warm by covering the vents in his cell with toilet paper until Defendant Anderson allowed staff to remove the toilet paper. *Id.* at ¶ 86-87. Plaintiff further contends that he "was not allowed to exercise and went extraordinarily long periods of time locked in his cell." *Id.* at ¶ 84. Additionally, Plaintiff asserts that he was denied programs offered to other inmates in the general population and that "[f]or extraordinarily long periods of time Plaintiff was not afforded recreation, shower facilities, or commissary." *Id.* at ¶¶ 88 and 89. Plaintiff also alleges that he was denied medical treatment while in solitary confinement. *Id.* at ¶¶ 34, 53, 54, 79, and 95. Additionally, Plaintiff alleges that Defendant Anderson placed him in solitary confinement for up to six months at a time. *Id.* at ¶¶ 36, 98. Accepting these allegations as true and viewing them in the light most favorable to Plaintiff, the Court determines that Plaintiff has plausibly alleged extreme conditions of placement.

*(3) Did Plaintiff Plausibly Allege that the Placement in Solitary*
*Confinement Increased his Duration of Confinement?*

Plaintiff does not allege that being placed in solitary confinement increased the duration of his confinement.   Even viewing the Amended Complaint as a whole and in the light most favorable to Plaintiff, the Court cannot conclude that Plaintiff has plausibly alleged that being in solitary confinement increased the duration of Plaintiff's confinement.

*(4)  Did Plaintiff Plausibly Allege that the Placement in Solitary*
*Confinement was Indeterminate?*

Plaintiff alleges that Defendant Anderson did not provide him with either a hearing before being placed in solitary confinement nor did Defendant Anderson conduct a periodic classification review of the solitary confinement decision.  *Id*. at ¶ 114.  Viewing this allegation in the light most favorable to Plaintiff, the Court can reasonably infer from these allegations that Defendant Anderson placed Plaintiff in solitary confinement for an undefined and unknown period of time.  Thus, Plaintiff plausibly alleges that Defendant Anderson's decision to place Plaintiff in solitary confinement was indeterminate.  This factor, together with the first two factors, demonstrates that Plaintiff has plausibly alleged that solitary confinement imposed an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life. Accordingly, Plaintiff has plausibly alleged a liberty interest subject to procedural due process protections.

*b. Did Plaintiff Plausibly Allege that Defendant Anderson Accorded Him*
*Insufficient Process?*

Plaintiff's allegation that Defendant Anderson did not provide an initial hearing prior to placing Plaintiff in solitary confinement does not necessarily mean that Defendant Anderson did not reasonably examine whether to initially place Plaintiff in solitary confinement.  Plaintiff, however, also alleges that Defendant Anderson did not conduct a periodic classification review

11

of the solitary confinement decision.  *Id.*  Viewing this particular allegation in the light most favorable to Plaintiff, the Court concludes that Plaintiff has plausibly pled that Defendant Anderson did not provide Plaintiff with an opportunity to respond to the continued decision to keep Plaintiff in solitary confinement.  Moreover, Plaintiff's allegation that Defendant Anderson kept Plaintiff in solitary confinement despite being advised that Plaintiff would do better without isolation supports a reasonable inference that Defendant Anderson did not weigh safety and security concerns as part of his placement decision.  Thus, Plaintiff has plausibly alleged that Defendant Anderson did not provide him with sufficient process prior to depriving him of his liberty interest.  Count I is, therefore, not subject to a Rule 12(b)(6) dismissal for failure to state a Fourteenth Amendment procedural due process claim.

> *2.  Count IV:  The Section 1983 Custom and Policy Claims Against Defendant Emerald Correctional Management, LLC*

Although Count IV is directed to Defendant Anderson's customs and policies, Defendant Emerald Correctional Management, LLC argues that the Court should dismiss any Section 1983 custom and policy claim Plaintiff might have brought against it.  Defendant Emerald Correctional Management, LLC notes that Plaintiff maintains in the last paragraph of Count IV that "[t]here is a causal connection between Defendants' policies and the violation of Plaintiff's constitutional rights, which amounts to deliberate indifference."   (Doc. 22) (emphasis added) at ¶ 154.  Elsewhere in the Amended Complaint, Plaintiff alleges that "Defendants Anderson and Emerald had a policy and practice of housing the seriously mentally ill in isolation."  *Id.* at ¶ 136.

Plaintiff correctly observes that bringing a claim against a government official in his official capacity, like Defendant Anderson, is the same as bringing a claim against the entity which employs the government official, in this case, Defendant Emerald Correctional Management, LLC.  *See, e.g., Stewart v. City of Prairie Village, Kan.*, 904 F.Supp.2d 1143, 1161

and n. 57 (D. Kan. 2012) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  In cases

where a plaintiff brings a claim against both a government official in his official capacity as well

as the government official's employer, courts have determined that suing both the government

official and the employer is redundant.  *See id.*  Since a liberal reading of Count IV leads the

Court to conclude that Count IV is really directed at Defendant Anderson, it would be

appropriate for the Court to dismiss the Count IV claim, such as it is, against Defendant Emerald

Correctional Management, LLC on the basis of redundancy.  *See Parrish v. Hot Spring County*,

2008 WL 341336 *4 (W.D. Ark.) (claim against county dismissed because it was redundant to

maintain suit against county official in official capacity and also against county).  Hence, the

Court will dismiss Count IV without prejudice as to Defendant Emerald Correctional

Management, LLC.

   *3.  Count IV:  The Section 1983 Custom and Policy Claim Against Defendant Anderson
   in his Official Capacity*

   Defendant Anderson argues that to state a Section 1983 custom and policy claim against

him in his official capacity Plaintiff must allege plausible facts showing that the warden was a

"final policy-maker."  Defendant Anderson asserts that Plaintiff has not done so.  To impose

Section 1983 liability on a government official acting in his official capacity, i.e., to impose

liability on the government official's employer, a plaintiff must show that a government policy

or custom caused a constitutional injury and that the government policy or custom was "enacted

or maintained with deliberate indifference to an almost inevitable constitutional injury."

*Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 769 (10th Cir. 2013).   A policy

or custom is promulgated "'by those whose edicts or acts may fairly be said to represent official

policy….'"  *Id.* at 770 (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 694

(1978)).  For instance, a challenged practice can be an official policy or custom if it is "a final

decision by a municipal policymaker….” *Id.* (citation omitted).  To decide if an official is a final policymaker, the Court “must consider whether: 1) the official is meaningfully constrained by policies made by another; 2) the official’s decisions are subject to meaningful review; and 3) the decisions are within the realm of the official’s authority.”  *Meyer v. Nava*, 518 F.Supp.2d 1279, 1286-87 (D. Kan. 2007) (citing *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995)).

Here, Plaintiff alleges that since “[t]he Lincoln County Board of County Commissioners has delegated the responsibilities of running LCDC to Defendant Emerald and Defendant Anderson,” Defendant Anderson is a final policymaker.  (Doc. 22) at ¶¶ 141-43.  Plaintiff, however, does not allege further facts to explain how the delegation of responsibility makes Defendant Anderson a final policymaker nor does Plaintiff  provide any factual allegations addressing the above factors pertaining to when an official is a final policymaker.  Plaintiff, therefore, has failed to bring a plausible Section 1983 custom and policy claim against Defendant Anderson in his official capacity.  Thus, the Court will dismiss Count IV without prejudice against Defendant Anderson in his official capacity.

### 4.  Count II:  The Section 1983 Eighth and Fourteenth Amendment Claims Against Defendant Anderson in his Individual Capacity

Defendant Anderson argues that the Plaintiff has pled insufficient facts to plausibly support his Eighth and Fourteenth Amendment claims that Defendant Anderson, in his individual capacity, personally provided inadequate medical care to Plaintiff and maintained Plaintiff in inhumane conditions of confinement.  In the alternative, Defendant Anderson contends that Plaintiff did not plead sufficient facts to plausibly show that Defendant Anderson, in his individual capacity, is liable under the theory of “supervisory liability.”  Plaintiff, however, does not argue that he is bringing Count II against Defendant Anderson on the basis of supervisory liability. *See* (Doc. 24) at 5-10; (Doc. 32) at 9-10.  Consequently, the Court will focus on whether

14

Plaintiff has alleged sufficient facts to plausibly show that Defendant Anderson personally violated Plaintiff's rights under the Eighth and Fourteenth Amendments by providing Plaintiff with inadequate medical care and by exposing Plaintiff to inhumane conditions of confinement.[4]

In the context of an allegation that a prison official failed to provide an inmate with adequate medical care, a plaintiff must show that the prison official was deliberately indifferent to the inmate's serious medical needs. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). This test involves objective and subjective components. *Id.* First, the Plaintiff must produce objective evidence of a sufficiently serious medical need. *Id.* Second, the subjective deliberate indifference component requires that the plaintiff show that "'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting (*Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). With respect to knowledge of an excessive risk, "'a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer,* 511 U.S. at 842).

Similar to an alleged constitutional deprivation of adequate medical care, a plaintiff must satisfy both objective and subjective components to prove unconstitutional conditions of confinement. *See Craig v. Eberly*¸164 F.3d 490, 495 (10th Cir. 1998). To satisfy the objective component, the plaintiff must demonstrate that the conditions of confinement denied "'the minimal civilized measure of life's necessities….'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Aside from the severity of the alleged inhumane conditions of confinement, an

---

[4] The Court notes that the applicable standards for both the Eighth and Fourteenth Amendment claims are the same. *See, e.g., Barrie v. Grand County, Utah*, 119 F.3d 862, 868 (10th Cir. 1997); *Woodford v. Robillard*, 2013 WL 1403494 *10 (D. Utah) (citing *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1315 (10th Cir. 2002)).

important factor in the objective component analysis is the duration of the conditions of confinement. *Id.* When a plaintiff alleges multiple inhumane conditions, the Court is cognizant that "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Id.* (quoting *Wilson*, 501 U.S. at 304) (internal quotations omitted). To demonstrate the subjective component, the plaintiff must show that the prison official acted with deliberate indifference to the inmate's health and safety, the same standard used with respect to inadequate medical care claims. *Id.*

Before analyzing whether Plaintiff has plausibly pled facts which show both the objective and subjective components necessary for his Eighth and Fourteenth Amendment claims, the Court will address Defendant Anderson's assertion that Plaintiff must also allege that Defendant Anderson's misconduct "shocks" the Court's conscience. *See Richardson v. Sully*, 1994 WL 97073 *2 (10th Cir.) (acknowledging applicable standard in Eighth and Fourteenth Amendment cases). The Tenth Circuit has held that when an official has the time to deliberate about a decision and does so with "calculated" indifference, then that indifference is conscience shocking. *Radecki v. Barela*, 146 F.3d 1227, 1231-32 (10th Cir. 1998); s*ee also Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1075 (9th Cir. 2013) ("A prison official's deliberately indifferent conduct will generally 'shock the conscience' so long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner."); *Chavez v. Board of County Com'rs of Sierra County*, 899 F.Supp.2d 1163, 1182 (D.N.M. 2012) ("a finding of deliberate indifference in a claim for failure to provide for a detainee's serious medical needs shocks the conscience as a matter of law…."). Consequently, if

16

Plaintiff has alleged sufficient facts which plausibly show the Defendant Anderson was deliberately indifferent to Plaintiff's medical needs and conditions of confinement, then Plaintiff necessarily has met the shocks-the-conscience standard.

Defendant Anderson does not contest that Plaintiff has pled sufficient facts to show that he had serious medical needs and that the conditions of confinement did not meet the "minimal civilized measure of life's necessities."  Instead, Defendant Anderson argues that Plaintiff has not sufficiently pled that Defendant Anderson's conduct constituted deliberate indifference to Plaintiff's health and safety.  Defendant Anderson contends that the Amended Complaint does not establish that he knew of and disregarded any excessive risk to Plaintiff's health and safety.

With respect to the lack of adequate medical care claim, Plaintiff alleges that (1) Defendant Anderson knew about Plaintiff's mental health problems before his 2011 incarcerations and placement in solitary confinement; (2) during his first incarceration in 2011, Plaintiff repeatedly sought medical help for his mental illness from Defendant Anderson and Plaintiff's family alerted Defendant Anderson to Plaintiff's serious mental health needs; (3) Defendant Anderson knew on July 18, 2011, that Plaintiff was not receiving adequate medical care; (4) Defendant Anderson knew of Plaintiff's deteriorating mental health while in solitary confinement; and (5) Defendant Anderson knew that Plaintiff would do better in a medical ward instead of being isolated.  (Doc. 22) at ¶¶ 16, 24, 27, 38, 48, and 76.  It is also reasonable for the Court to infer that, as warden, Defendant Anderson likely knew of Plaintiff's July 31, 2011, suicide attempt and the September 15, 2011, razor blade incident.  *Id.* at ¶¶ 44 and 57-62. Defendant Anderson could have inferred from these incidents an obvious substantial risk of serious harm to Plaintiff from being placed in solitary confinement.  Even if the Defendant Anderson was not aware of the suicide attempt and the razor blade incidents, the other

allegations, when viewed in the light most favorable to Plaintiff, plausibly show that Defendant Anderson was aware that Plaintiff was at an excessive risk of harm to his mental and physical health due to his placement in solitary confinement.

Plaintiff also alleges that (1) Defendant Anderson failed to provide an adequate medical screening; (2) Defendant Anderson failed to send Plaintiff to a hospital emergency room; (3) Defendant Anderson repeatedly failed to transport Plaintiff to medical appointments during August and September 2011; (4) Defendant Anderson continued to keep Plaintiff in solitary confinement despite being told by staff that Plaintiff would do better in a medical unit; (5) Defendant Anderson refused to get Plaintiff mental health medications; and (6) Defendant Anderson kept Plaintiff in solitary confinement for approximately six months. *Id.* at ¶¶ 19, 53, 54, 77, and 79. These allegations, when viewed in the light most favorable to Plaintiff, plausibly demonstrate that Defendant Anderson disregarded an excessive risk to Plaintiff's mental health by placing Plaintiff in solitary confinement for such a lengthy time. Consequently, Plaintiff has plausibly alleged that Defendant Anderson was deliberately indifferent to Plaintiff's serious medical needs. Hence, Plaintiff has successfully pled Eighth and Fourteenth Amendment claims against Defendant Anderson, in his individual capacity, for failure to provide adequate medical care.

With respect to Plaintiff's claims regarding inhumane conditions, Plaintiff has alleged that (1) Defendant Anderson placed Plaintiff in solitary confinement for a six month period; (2) Defendant Anderson did not allow Plaintiff to have letters, books, visitation, or phone calls; (3) Defendant Anderson had only one male suicide smock; (4) Defendant Anderson allowed staff to remove toilet paper from Plaintiff's cell; and (5) Defendant Anderson knew that Plaintiff was cold and shivering and without sufficient clothing or blankets, but did nothing to correct the

situation.  (Doc. 22) at ¶¶ 67, 70, 87, and 93.  These alleged conditions, when considered in combination, do not have a mutually enforcing effect producing a "deprivation of a single, identifiable human need such as food, warmth, or exercise."  The only allegation directed to Defendant Anderson that concerns such an identifiable human need is the alleged deprivation of warmth.  Viewing Plaintiff's allegation regarding lack of warmth in the light most favorable to Plaintiff, the Court determines that Plaintiff plausibly alleges that Defendant Anderson knew of an excessive risk of denying Plaintiff warmth for extensive lengths of time and disregarded that risk.  Plaintiff has plausibly alleged that Defendant Anderson was deliberately indifferent to Plaintiff's basic need for warmth.  Accordingly, Plaintiff's claim that Defendant Anderson, in his individual capacity, deprived Plaintiff of warmth in violation of the Eighth and Fourteenth Amendments survives a Rule 12(b)(6) attack.  In sum, the Count II claim against Defendant Anderson in his personal capacity is not subject to dismissal.

### 5.  Count III:  The ADA Claim Against Defendant Anderson

Defendant Anderson argues that the ADA claim in Count III should be dismissed because Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA).  The PLRA states:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion provision applies to ADA claims.  *Jones v. Smith*, 109 Fed. Appx. 304, 307(10th Cir. 2004).  However, the PLRA exhaustion requirement applies only if a plaintiff is a prisoner at the time the lawsuit is filed.  *See Norton v. The City of Marietta, OK*, 432 F.3d 1145, 1150 (10th Cir. 2005).  In this case, Plaintiff does not allege any facts that he was a prisoner when he filed this lawsuit.  In fact, Plaintiff alleges that he was

19

released from the LCDC on March 12, 2012, well before he filed this lawsuit on October 19, 2012.  *See* (Doc. 1) and (Doc. 22) at ¶ 106.  Consequently, Plaintiff was not required to exhaust administrative remedies under the PLRA.  Count III, therefore, is not subject to a Rule 12(b)(6) dismissal.

IT IS ORDERED that:

1.  Defendants Emerald Correctional Management, LLC, and Warden Arthur Anderson's Opposed Motion to Dismiss Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted Pursuant to F.R.C.P. 12(b)(6) and Memorandum in Support (Doc. 26) is granted, in part; and

2.  Count IV of the Amended Complaint will be dismissed without prejudice as to Defendant Emerald Correctional Management, LLC and as to Defendant Anderson in his official capacity.

_____
UNITED STATES DISTRICT JUDGE